## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DEMOCRACY CAPITAL CORPORATION,

    Plaintiff,

v.

ROBERT F. MCDERMOTT, JR., ET AL.,

    Defendants.

Civil No. 25-1654-BAH

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

Defendants Robert F. McDermott, Jr. ("Robert McDermott"), MCDJR-TESSE, LLC ("MCDJR"), Peter McDermott, and PMCDTESSE, LLC ("PMCD") (collectively "Defendants") removed this action from the Circuit Court of Maryland for Baltimore City to this Court. *See* ECF 1 (notice of removal).   The case concerns "loans and other credit accommodations" Defendants extended to a separate company, Tessemae's LLC ("Tessemae's"), which Plaintiff Democracy Capital Corporation ("Plaintiff" or "Democracy") and Defendants agreed to subordinate to loans and credit accommodations Democracy had extended to Tessemae's, and Defendants' acceptance of payments from Tessemae's that Democracy asserts should have been paid to it "as the senior lender." *See* ECF 7 (state court complaint), at 1–2 ¶¶ 1–4.  Democracy brings five counts total, four for conduct before Tessemae's filed for Chapter 11 bankruptcy in February 2023 (which was resolved in summer 2024) and one for conduct after. *See id.* at 13–14 ¶¶ 58–60, at 23–30 ¶¶ 98–

125. The two pending motions concern only Count V, which alleges breach of contract for post-bankruptcy payments.[1]  *Id.* at 28–30 ¶¶ 121–25.

The pending motions include a motion to stay, ECF 10, and a motion to dismiss, ECF 11, both filed by Defendants.  Defendants seek a stay of this action "pending the adjudication [in the Bankruptcy Court for the District of Maryland] of Defendants' Motion to Interpret Chapter 11 Plan of Liquidation and to Enforce the Resulting Settlement Agreement (Bankr. ECF 421) ('Motion to Interpret') filed in *In re Tessemae's LLC*, Case No. 23-10675 (NVA) ('Bankruptcy Case')."  ECF 10, at 1.  Defendants contend that "[i]f the Bankruptcy Court grants the Motion to Interpret, Plaintiff will be precluded from pursuing Count V."  *Id.* at 3.

Defendants also argue that dismissal of Count V is warranted because the plan of liquidation confirmed by the Bankruptcy Court in August 2024 forecloses Democracy's claims to the distributions from Tessemae's under principles of res judicata.  *See* ECF 11, at 5–11. Democracy filed oppositions to both motions.  ECF 16 (opposition to motion to dismiss); ECF 17 (opposition to motion to stay).  Defendants filed replies.  ECF 18 (reply regarding motion to stay); ECF 19 (reply regarding motion to dismiss).  Democracy filed a "supplemental opposition," ECF 21, which included an order from the Bankruptcy Court staying the bankruptcy proceeding pending "signal[ from this Court] that the District Court intends for [the Bankruptcy] Court to resolve the matters pending before it."  ECF 21-1, at 3.  A copy of that Bankruptcy Court order was also entered by the Clerk.  ECF 21.

---

[1] The four counts based on improper pre-bankruptcy payments include: breach of contract (Count I), ECF 7, at 21–23 ¶¶ 93–97; conversion (Count II), *id.* at 23–24 ¶¶ 98–106; breach of fiduciary duty (Count III), *id.* at 24–26 ¶¶ 107–14; and fraudulent concealment (Count IV), *id.* at 26–28 ¶¶ 115–20.

The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, the Court will GRANT IN PART the motion to stay and stay only Count V pending adjudication of the Motion to Interpret by the Bankruptcy Court. The Court will deny the motion to dismiss without prejudice to be raised again following the Bankruptcy Court's decision on the Motion to Interpret.

## I.    RELEVANT FACTUAL BACKGROUND

The Court recites here only the facts relevant to Count V. Democracy and Defendants executed the subordination agreements on April 10, 2018, after Democracy agreed to refinance other loans upon which Tessemae's had defaulted (the "Democracy Loan"). ECF 7, at 4–5 ¶¶ 16–19, at 6 ¶¶ 22–23, at 7–9 ¶¶ 27–34, at 9–11 ¶¶ 35–42, at 11–12 ¶¶ 43–50. Between 2019 and 2020, Tessemae's defaulted on the Democracy Loan, and the loan matured on April 10, 2020. *See id.* at 12 ¶ 54.

On February 1, 2023, Tessemae's filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland. *Id.* at 13 ¶ 58 (citing Bankr. No. 23-10675). On January 25, 2024, in a separate proceeding in the Circuit Court of Maryland for Baltimore County, Democracy obtained a judgment against Tessemae's and the guarantors of the Democracy Loan, Gregory and Genevieve Vetter (the "Vetters"), in the amount of $8,706,250.00. *See id.* ¶¶ 56–57 (citing Case No. C-03-CV-20-004048 (Cir. Ct. Balt. Cnty.)). The Bankruptcy Court approved a plan of liquidation in August 2024 ("Approved Bankruptcy Plan" or the "Plan"), which included a claim by Democracy against Tessemae's in the amount of $16,233,760.77.[2] *Id.*

---

[2] Democracy refers to the Plan as a "plan of reorganization." ECF 7, at 14 ¶ 60. However, the Approved Bankruptcy Plan is titled "Order Confirming Third Amended Plan of *Liquidation* Under Chapter 11 of the United States Bankruptcy Code Proposed by the Debtor and Debtor-In-Possession." *See* ECF 389 in Bankr. No. 23-10675 (entered Aug. 16, 2024) (emphasis added).

at 14 ¶ 60; *see* ECF 376 in Bankr. No. 23-10675 (Third Amended Plan of Liquidation); ECF 389

in Bankr. No. 23-10675 (Order Confirming Third Amended Plan of Liquidation).

Democracy alleges that three post-bankruptcy payments violate the subordination

agreements: (1) $200,000 Defendants received in September 2024 as a distribution of the

bankruptcy estate, ECF 7, at 18 ¶ 76; (2) $550,000 which the Vetters paid to Defendants in July

2024 as part of an agreement separate from the Approved Bankruptcy Plan and which Democracy

alleges was retained personally by Robert and Peter McDermott, *id.* at 18–19 ¶¶ 77–78; and (3)

$675,000 paid to Defendants as a repayment for a debtor-in-possession loan ("DIP Loan")

Tessemae's borrowed in February 2023,[3] *id.* at 19–20 ¶¶ 81–89.

Defendants filed the Motion to Interpret in the Bankruptcy Court on March 24, 2025. *See*

ECF 421 in Bankr. No. 23-10675. Plaintiff filed the instant suit in the Circuit Court of Maryland

for Baltimore City on April 23, 2025. *See* ECF 7. Defendants removed the action to this Court

on May 23, 2025. *See* ECF 1.

## II.    **MOTION TO STAY**

Defendants move to stay this action in its entirety pending the Bankruptcy Court's

adjudication of the Motion to Interpret. *See* ECF 10. They argue that a stay promotes judicial

economy, *id.* at 4–5, that denying a stay would cause hardship to Defendants, *id.* at 5–6, and that

---

Defendants also note in their reply that "the Plan is a liquidation plan, not a plan of reorganization[.]" ECF 18, at 6.

[3] Democracy alleges that the DIP Loan nominally came from a new entity, Tesse DIP, but that "all funds used to make the loan were personally provided by Robert McDermott and/or Peter McDermott." ECF 7, at 19 ¶¶ 82–83. The Bankruptcy Court approved the DIP Loan, secured by Tessemae's assets, and noted that it was subordinate to the Democracy Loan. *Id.* at 20 ¶ 84. Democracy alleges that Tessemae's repaid $25,000 of the DIP Loan during the pendency of the bankruptcy case and that $650,000 was distributed to Tesse DIP in September 2024 under the Approved Bankruptcy Plan. *Id.* ¶¶ 85–86. Democracy alleges that Robert McDermott personally received and retained all of these payments. *Id.*

4

a stay will not prejudice Democracy, *id.* at 6–7. In opposition, Democracy asserts that Defendants improperly seek to stay the whole action, which will not promote judicial economy because the result of the Motion to Interpret will not affect Counts I through IV. ECF 17, at 4–5. Democracy refers to its opposition to the Motion to Interpret in arguing that the motion is "procedurally improper and substantively without merit." *Id.* at 5. Democracy points to the fact that a ruling by the Bankruptcy Court would be subject to appeal in this Court as a factor weighing against the interests of judicial economy. *Id.* at 6. Democracy further asserts that it will be prejudiced by a stay of the entire case, and that "[a]t minimum, Democracy should be entitled to proceed with litigation on the claims asserted in Counts I through IV of its Complaint." *Id.* at 7. Democracy contends that denying a stay will not impose a significant hardship on Defendants. *Id.* at 8–9. In reply, Defendants assert that "[t]he more practical, orderly, and economical approach is for this Court to stay this case to allow the Bankruptcy Court to adjudicate the first-filed and fully briefed Motion to Interpret." ECF 18, at 2.

### A. Legal Standard

District courts have discretion to stay proceedings under their inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to issue a stay is a case-specific inquiry. *Id.* at 254–55; *see also Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) ("The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977))). On a motion to stay, "a district court should consider three factors: '(1) the interests of judicial economy; (2) hardship and equity to the moving

party if the action is not stayed; [and,] (3) potential prejudice to the non-moving party.'" *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 525 (E.D. Va. 2018) (alteration in original) (quoting *Buzzell v. JP Morgan Chase Bank*, No. 3:13-CV-668, 2015 WL 5254768, at *2 (E.D. Va. Sept. 9, 2015)).

## B. Analysis

Whether a stay serves judicial economy depends on the unique factors at play in this case, where the motion to dismiss presents the same question of interpretation pending before the very court that entered the order to be interpreted. "A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (citing e.g., *Stoll v. Gottlieb*, 305 U.S. 165, 170–71 (1938)). But "[t]he *res judicata* effect of a confirmed plan is limited by the language of the plan." *In re Russo-Chestnut*, 522 B.R. 148, 157–58 (Bankr. D.S.C. 2014) (citing *In re Hazelwood*, 513 B.R. 323, 330–31 (Bankr. W. D. Ky. 2014)). "Some courts have taken the view that if a plan does not expressly retain a claim that could have or should have been addressed at confirmation, the parties are barred by res judicata from later asserting those claims." *In re Railworks Corp.*, 325 B.R. 709, 716 (Bankr. D. Md. 2005) (citations omitted).

The Approved Bankruptcy Plan incorporates a "Senior Secured Creditors Settlement Agreement," and includes a reservation of rights provision that states in relevant part:

> By entering into the Senior Secured Creditors Settlement Agreement and consenting to the terms of the Plan, the Settling Parties [including Democracy and Defendants] do not release or waive any claims or rights which may exist against any of the Settling Parties or any other person or entity other than (i) the Debtor (which release is subject to the terms of this Plan), and (ii) the Vetters, to the extent that any Settling Party has released the Vetters per separate agreement or as expressly set forth in this Plan. All other rights and claims are expressly reserved.

ECF 376 in Bankr. No. 23-10675, at 14 ¶ 1.71; *see also id.* at 23 ¶ 6.2 ("After extensive negotiations between the Class 1 [including Defendants] and Class 3 [including Democracy] creditors, as well as the Vetters, the terms of the Senior Secured Creditors Settlement were reached and incorporated into this Plan, thus allowing this case to be resolved on a consensual basis."). Democracy argues that this reservation of rights provision expressly permits recovery under the subordination agreements of the payments implicated in Count V. *See* ECF 16, at 11. Defendants argue that "[b]y entering into the Settlement Agreement and accepting the Plan, Plaintiff gave up any right to claim distributions the Plan provides to Defendants." ECF 11, at 8.

In the context of whether a bankruptcy order bars a debtor from seeking to discharge remaining debts, the Fourth Circuit has expressly "defer[red] to the bankruptcy court's interpretation of its own order" when "the order at issue [] is ambiguous." *In re Tomlin*, 105 F.3d 933, 935 (4th Cir. 1997). Of import to the Fourth Circuit was the fact that the "bankruptcy court 'was directly engaged' in the earlier proceedings and thus had the 'better vantage point' to make a determination on its earlier order." *Id.* at 941 (citing *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 983 (1st Cir. 1995)). The same principle applies here, and a stay of Count V in this action would permit the Bankruptcy Court to rule on the Motion to Interpret its own prior order.

Further, Defendants filed the Motion to Interpret before Democracy filed the instant suit. Under the "first filed" rule, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action[,]" when two suits involve the same factual issues, parties, and possible available relief. *MVP Grp. Int'l, Inc. v. Smith Mountain Indus., Inc.*, No. 2:11-CV-2608, 2012 WL 425010, at *1 (D.S.C. Feb. 9, 2012) (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)) (citing *Volvo Constr. Equip. N. Am.*,

*Inc. v. CLM Equip.*, 386 F.3d 581, 594–95 (4th Cir. 2004)). While the Motion to Interpret is not

a separate *suit* in the traditional sense, it does involve the same parties, facts, and issues.

The Court understands Democracy's argument that the Bankruptcy Court is a division of

the District Court. While true, this contention ignores the expertise of the Bankruptcy Court and

a decision by the Bankruptcy Court on the Motion to Interpret will certainly clarify the issues on

the motion to dismiss. Though the Bankruptcy Court's decision on the Motion to Interpret will be

subject to review in this Court, the Bankruptcy Court, from its "better vantage point" after "direct[]

engage[ment]" on this very subject, is in a better position to interpret what is and is not precluded

by the Plan in the first instance. *See In re Tomlin*, 105 F.3d at 941. To the extent Democracy

asserts that the Bankruptcy Court does not have subject matter jurisdiction to interpret the Plan,

*see* ECF 17, at 5, this Court will leave that question to the Bankruptcy Court's capable

consideration.[4]

Applying the second two *Gibbs* factors, prejudice and hardship, however, does not counsel

in favor of staying this action in its entirety. Both pending motions concern specifically Count V.

Neither side argues that the pre-bankruptcy payments at issue in the other four counts are

---

[4] There appears to be good reason to believe the Bankruptcy Court *does* have subject matter jurisdiction to interpret the Plan it entered. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, (2009) (finding that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"). Moreover, even if the Bankruptcy Court were to find on a more fulsome analysis that it does not have jurisdiction to entertain the Motion to Interpret, *see* ECF 17, at 5 (disputing the Bankruptcy Court's "jurisdiction to opine on the issues raised in the Motion to Interpret"); ECF 18, at 4–5 (arguing that the Bankruptcy Court *does* have jurisdiction "to interpret the confirmed Plan and enforce the Settlement Agreement"), such a decision by the Bankruptcy Court would still serve to clarify the issues by consolidating the open questions currently pending before this Court and the Bankruptcy Court. *See Waterproofing Specialties, Inc. v. Weaver Cooke Constr., LLC*, 564 B.R. 276, 283 (E.D.N.C. 2017) (finding "bankruptcy court is in a better position to address . . . in the first instance" an issue of how and whether the bankruptcy court's prior analysis on certain claims should extend to other claims); *In re Baltimore Marine Indus.*, 476 F.3d 238, 243 (4th Cir. 2007) (noting that questions "involving rights and equities under the Bankruptcy Code [] are best determined in the first instance by the bankruptcy court).

implicated by the Motion to Interpret. As such, discovery may proceed on Counts I through IV with little disruption, as different pre-bankruptcy payments form the basis for those claims. *See Franklin v. Cleo AI Inc.*, Civ. No. 24-00146-JMC, 2024 WL 5007366, at *3 (D. Md. Dec. 6, 2024) (granting a partial stay but permitting discovery on some claims). Democracy's concerns about prejudice are alleviated by staying only Count V. Further, the delay caused by the stay will likely be relatively brief, as the Motion to Interpret is ripe in the Bankruptcy Court. The Court therefore determines that a stay limited to Count V is warranted here.[5]

### III.   MOTION TO DISMISS

Because the Court grants the stay as to Count V, it will deny the motion to dismiss, which also pertains to Count V, without prejudice. *OT, LLC v. Harford Cnty., Maryland*, Civ. No. GLR-17-2812, 2019 WL 4598010, at *7 (D. Md. Sept. 23, 2019) (granting a stay and denying without prejudice related motions to dismiss and for judgment on the pleadings implicated by the stay). Once the Motion to Interpret has been decided, and any appeal resolved, Defendant may raise the motion to dismiss again, if appropriate.

---

[5] Democracy contends that the Motion to Interpret "only pertain[s] to a portion of the Improper Post-Bankruptcy Payments that are the subject of Democracy's claim in Count V." ECF 17, at 3 n.1. The Vetter Settlement Payments (amounting to $550,000), which is part of Count V, is separate and apart from the Plan. *Id.* Defendants do not address this issue in reply. *See generally* ECF 18. However, because the Motion to Interpret discusses this payment as being part of Defendants' Class 1 claims under the Plan, *see* ECF 521-1 in Bankr. No. 23-10675, at 5, 7, the Court finds that staying this "sub-claim," such as it is, would likely confuse the issues more than clarify them.

## IV.    **CONCLUSION**

For the foregoing reasons, the motion to stay, ECF 10, is GRANTED IN PART AND DENIED IN PART. Count V is stayed, but the case will progress as to Counts I through IV. The motion to dismiss, ECF 11, is DENIED WITHOUT PREJUDICE to be raised again after the Bankruptcy Court rules on the Motion to Interpret. A separate implementing order will issue.

Dated: <u>February 13, 2026</u>

<u>/s/</u>

Brendan A. Hurson
United States District Judge
